BRUCE CORNWALL STRATTON AND LOUISE B. STRATTON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4735-66.   Filed June 4, 1969.

Bruce Cornwall Stratton, pro se.
*Roger Rhodes,* for the respondent.

**OPINION**

Home leave is granted pursuant to the Foreign Service Act of 1946, as amended, 22 U.S.C. sec. 1148. Section 1148(a) of that Act provides:

The Secretary may order to the continental United States, its Territories and possessions, on statutory leave of absence any officer or employee of the Service who is a citizen of the United States upon completion of eighteen months' continuous service abroad and shall so order as soon as possible after completion of three years of such service.

. Petitioner maintains the expenses he incurred for food, lodging, and transportation for himself, his wife, and his four children while he was on home leave constitute ordinary and necessary expenses incurred in the pursuit of his trade or business as a foreign service officer. Section 162(a)(2), I.R.C. 1954,[1] provides a deduction for traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business. We assume that the traveling expenses were incurred while petitioner was "away from home," which he claims was Karachi, Pakistan. The expenses do not seem lavish or extravagant in amount, recognizing they provided food, lodging, and transportation for a family of six for 3 or 4 months. The issue in this case focuses upon the requirement of section 162(a)(2) that the traveling expenses be incurred "in the pursuit of a trade or business." The petitioner contends that his trip to the United States and his travel within the United States while he was on home leave constitute a business trip, and that the expenses incurred during his travel within the United States were directly and proximately related to his business of living and working abroad for the U.S. Government. He maintains that under the Foreign Service Act and the regulations of the Department of State, a foreign service officer is "ordered" on home leave, that he must go when he is so ordered and that he must go to the United States, and he must remain in the United States for a certain period of time. While his family is not compelled to accompany him, petitioner maintains this is the intent of the assignment as members of his family appear on the original order and funds are provided for their transportation to the United States. Accordingly, it is maintained, petitioner was required to duplicate his living expenses and those of his family by maintaining his home in Karachi while he was required at the same time to pay all their travel expenses, including food and lodging, after they had arrived in the United States.

We do not think these alleged expenses were incurred by petitioner in the pursuit of his trade or business as a foreign service officer. Whatever were the circumstances surrounding petitioner's travel *to* this country, the record does not establish that petitioner's home leave was not granted primarily for his personal convenience. The "Authorization of Official Travel" authorizes official travel at Government expense to Denver, Colo., in order that petitioner might avail himself of leave at that place. Presumably, Denver was specified by petitioner as the place to which he would like to have transportation provided

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.

for himself and his family. The "Authorization" itself bears witness to the personal nature of home leave in its provisions: "This travel is not ordered at your request nor for your convenience, *except for leave as allowed by law*." (Emphasis supplied.)

In light of the regulations pertaining to home leave, we interpret this sentence to mean that home leave is granted at the employee's request and for his personal convenience. While deferral of home leave appears to constitute an exception to the established policy of the Department of State, the regulations clearly contemplate that such an exception may be made for personal reasons so as to "avoid detrimental application of general policy to specific cases." Foreign Affairs Manual sec. 455.2–2. It is only "Unspecified 'personal reasons' or 'post needs' " which are not considered sufficiently compelling for the Department to consider requests for exceptions to this policy. *Specified* personal reasons would appear to be sufficient for deferral of home leave. The purpose behind the requirement that personal reasons be specified appears to be merely to inform the Department of what those reasons are rather than to demonstrate any particular detriment to the employee. We find it difficult to believe that petitioner's financial inability or even his unwillingness to assume the burdensome expense of supporting his family in public accommodations in this country would not be considered "sufficiently compelling for the Department to consider [his request for deferral of home leave]," within the meaning of the Foreign Affairs Manual sec. 455.2–2. There is no evidence that petitioner's home leave in fact was under any compulsion. The personal nature of petitioner's travel expenses is further indicated by the fact that such expenses are not reimbursed by the Department of State. Nor are foreign service officers granted a per diem allowance while they are on home leave.

The regulations pertaining to home leave indicate the clearly personal nature of home leave. The employee "earns" home leave, which is "credited" to his "leave account" as earned, just as annual leave or vacation time would be earned by an employee and credited to his account. Section 453.42 of the Foreign Service Manual provides that an employee will not be granted home leave in excess of the amount to his credit. That section also provides that accrued annual leave may be granted in combination with home leave in order to provide an adequate period of leave in the United States. We read this to mean that, because home leave will not be granted for periods of less than 30 days (presumably because of the expense of transporting foreign service employees to the United States), an employee who has accrued less than 30 days of home leave may combine accrued home leave with accrued annual leave in order to reach the 30-day minimum. These *regulations set forth detailed provisions for computing home*

leave earned by an employee. The strict controls on the accrual of home leave, and the restriction against use of home leave in excess of the amount accrued further suggest that such leave is primarily for the personal benefit of the employee.

It is clear that home leave is not solely for the personal benefit of the employee. The legislative history of the Foreign Service Act of 1946 discloses that one purpose of home leave is to insure that every foreign service officer returns to the United States approximately every 2 years in order to renew touch with the American way of life and thereby become a better representative of this country abroad. Another purpose is to give such employee an opportunity to attend to certain personal matters such as medical and dental checkups and the purchase of new wardrobes. H. Rept. No. 2508, 79th Cong., 2d Sess., pp. 138, 139 (1946). These incidental benefits to the employee's career do not change the essential nature of the leave from personal to business. Many personal expenses are related, or even necessary, to the carrying on of a business and yet are not deductible.

Petitioner's argument is similar to that advanced by the taxpayer in *Rudolph* v. *United States*, 291 F. 2d 841, certiorari dismissed 370 U.S. 269 (1962). *Rudolph* presented the question of deductibility of expenses incurred by an insurance salesman, whose tax home was in Dallas, Tex., during his attendance with his wife at a convention in New York City. By having sold a predetermined amount of insurance, the husband qualified to attend the convention and, in line with company policy, to bring his wife with him. With 150 other employees and officers of the insurance company and 141 wives, they traveled to and from New York City on special trains, and were housed in a single hotel during their 2½-day visit. One morning was devoted to a "business meeting" and group luncheon, the rest of the time in New York City to "travel, sight-seeing, entertainment, fellowship or free time." The entire trip lasted 1 week. The company paid all the expenses of the convention trip. The Commissioner determined the payment of these expenses constituted taxable income and that the husband was not entitled to deduct the expenses as ordinary and necessary business expenses. There was evidence that the trip furthered the interests of the insurance company. It was not undertaken exclusively for the personal benefit of the employees and their wives. The convention kept the group together in New York City, and in transit as well, giving ample time for group discussions, exchanges of experience, and educational training. There was evidence that insurance companies benefit from the knowledge and increase in morale which result from these conventions. There was evidence, too, that business reasons of the company motivated the inclusion of wives in this particular convention. There was some evidence that the husband re-

garded the trip as "required" by his business—that he was an entrapped "organization man," required to attend such conventions, and that his future promotions depended on his presence. The tax consequences of the trip, it was decided, turned upon the taxpayer's "dominant motive and purpose" in taking the trip and the company's in offering it. The District Court found the trip was provided by the company for the primary purpose of affording a pleasure trip in the nature of a bonus, reward, and compensation for a job well done and that from the point of view of the taxpayer it "was primarily a pleasure trip in the nature of a *vacation*," *Rudolph* v. *United States*, 189 F. Supp. 2, 4–5. (Emphasis supplied.) On these findings the claimed expenses were held to constitute taxable income for which the taxpayer was not allowed any offsetting deduction.

We think the petitioner's case falls at least within the rationale of the *Rudolph* case. There is no evidence of compulsion in this case. The primary purpose of the Department of State in granting petitioner home leave appears to be, and we find it to be, to give petitioner a vacation. From the petitioner's point of view, his home leave was primarily a pleasure trip in the nature of a vacation. In these circumstances, the claimed expense deductions cannot be allowed.

*Decision will be entered for the respondent.*