Bruce Cornwall and Louise B. STRAT-
TON, Plaintiffs-Appellants,

v.

COMMISSIONER INTERNAL REVE-
NUE SERVICE, Defendant-
Appellee.

No. 24808.

United States Court of Appeals,
Ninth Circuit.

Sept. 1, 1971.

Browning, Circuit Judge, dissented and filed opinion.

Clay G. Diamos (argued), Tucson, Ariz., for appellants.

Bennet Hollander (argued), Dept. of Justice; K. Martin Worthy, Chief Counsel, Internal Rev. Service; Johnnie M. Walters, Asst. Atty. Gen., Tax Division, Washington, D. C., for appellee.

Before BARNES, BROWNING and TRASK, Circuit Judges.

TRASK, Circuit Judge:

This is an appeal from a determination by the Tax Court upholding the Commissioner's assessment of income tax deficiencies against taxpayers (husband and wife) for the years 1962 and 1963 in the amounts of $561.72 and $415.00, respectively. The Tax Court's opinion is reported at 52 T.C. 378 (1969). This court has jurisdiction of the appeal under 26 U.S.C. § 7482.

Taxpayer Bruce Cornwall Stratton is a foreign service officer for the Department of State. At the time pertinent herein, he was assigned to a permanent duty station in Karachi, Pakistan. In the fall of 1962, he and his family were authorized to travel at government ex-

pense to the United States so that he could have consultation with the Department in Washington, D. C., and then avail himself of leave time. After arrival and consultation, taxpayer went on leave for several months.[1] He was on "home leave"[2] for a portion of this period and on annual leave for the remainder. While on leave, taxpayer and his family traveled around the United States.

On his federal income tax returns for 1962 and 1963, taxpayer claimed, pursuant to § 162(a), Int.Rev.Code of 1954, deductions for the unreimbursed expenditures he incurred for transportation, meals and lodging for himself and his family during the period he was on home leave as ordinary and necessary business expenses.[3] The Commissioner disallowed the deductions.

The Tax Court upheld the Commissioner, finding that the primary purpose of the Department of State in granting petitioner home leave was a personal one, to give him a vacation, and that from petitioner's point of view it was, in fact, treated as a pleasure trip in the nature of a vacation. The Tax Court further

found that there was no evidence that Stratton was compelled to take his home leave.

When a traveling taxpayer engages in both business and personal activities, expenses for transportation, meals and lodging are deductible only if the trip is "related primarily to the taxpayer's trade or business" and not "primarily personal in nature." Treas.Reg. § 1.162–2(b) (1) (1958). "Whether a trip is related primarily to the taxpayer's trade or business or is primarily personal in nature depends on the facts and circumstances in each case." Treas. Reg. § 1.162–2(b) (2) (1958).

The sole question presented for review is whether the Tax Court, under the facts and circumstances of this case, was clearly erroneous in finding that home leave is primarily personal in nature rather than primarily related to taxpayer's trade or business.[4]

The Commissioner acknowledges, as did the Tax Court, that the legislative history of § 933 of the Foreign Service Act of 1946, as amended, 22 U.S.C. § 1148 (1964),[5] shows that Congress want-

---

1. The length of Stratton's leave is uncertain. The Tax Court's opinion reports that he was on leave from October 15, 1962, to either January 15, 1963, or February 15, 1963. 52 T.C. 378, 382 (1969).

2. "Home leave" is leave time which is earned by foreign service employees according to the length of time spent at the overseas duty station and may be spent only in the United States.
   "Home leave, as distinguished from Annual leave, may be used only in the United States, its Territories or possessions." Foreign Service Manual 11–8–57, 453.41.

3. For the 1962 taxable year § 162(a), Int. Rev.Code of 1954, read as follows:
   "SEC. 162. Trade or business expenses
   (a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
   *       *       *       *       *
   (2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business;"

Subsection (a) (2) was amended in 1962 (effective with respect to taxable years ending after December 31, 1962) to substitute "(including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances)" for "(including the entire amount expended for meals and lodging)." Act of Oct. 16, 1962, Pub.L. 87–834, § 4(b), 76 Stat. 976 (codified at 26 U.S.C. § 162 (1967)).

4. There is no contention that the expenses were lavish or extravagant or that Stratton was not "away from home" at the time they were incurred.

5. "§ 1148. Return of personnel to United States, its Territories and possessions on leaves of absence
   (a) The Secretary may order to the continental United States, its territories and possessions, on statutory leave of absence any officer or employee of the Service who is a citizen of the United States upon completion of eighteen months' continuous service abroad and shall so order as soon as possible after completion of three years of such service.

ed to insure, by way of the home leave provisions, that foreign service officers and employees would return to their native land regularly "to renew touch with the American way of life and so become better representatives of this country abroad." H.R.Rep.No.2508, 79th Cong., 2d Sess. 139 (1946). *See also* 92 Cong. Rec. 9587, 9589 (1946) (remarks of Rep. Rogers and Rep. Vorys).[6] Nevertheless, the Commissioner maintains that home leave is a trip that is primarily personal in nature. He points out that taxpayer, while on home leave, performed no official acts, was accountable to no one, and was not required to complete any work by the time he returned to duty. He also notes that home leave time is "earned" and "credited" to the employee's leave account according to the length of his service abroad rather than bearing any relation to the amount of time needed for orientation. It is further pointed out that taxpayer received no per diem or reimbursement of expenses from the government during this period, thus suggesting that the Department itself did not view home leave as a business trip. And finally, the Commissioner notes that the language of taxpayer's government travel authorization expressly stated that said travel was not at taxpayer's request or convenience "except for leave [*i. e.*, home leave] as allowed by law."

■ On the other hand, the taxpayer argues that he was "ordered" to take home leave as a mandatory duty assignment which he carried out on behalf of his employer, the Department of State. As previously mentioned, the Tax Court found no evidence that Stratton was in fact compelled to take his home leave. That finding, however, is clearly erroneous. Section 933(a) of the Foreign Service Act, *as amended,* provides that the Secretary of State "may order" to the United States on statutory leave of absence any officer of the Service who has completed 18 months of continuous service abroad and "shall order" as soon as possible after completion of three years of service. 22 U.S.C. § 1148(a) (1964). A State Department regulation provides that § 933(a) "makes it *compulsory* that such employee be so ordered on home leave as soon as possible after completion of 3 years of such service." (Emphasis supplied). Dept. of State Foreign Affairs Manual (Rev. August 8, 1962), § 453.1–1(b).[7]

The Tax Court found comfort in the fact that the State Department regulations also provide for "deferral" of home leave. Foreign Affairs Manual, § 455.2–2.[8] Relying on this provision, it found that Stratton failed to show that financial inability or an unwillingness to assume the burden would not have been a sufficiently compelling reason to justify such deferral. This reliance on the deferral provision is misplaced. The regulation merely affects the timing of home leave. There is no provision that the obligation can be avoided entirely. In fact, the regulation requires that a request for deferral be accompanied by a proposed date of departure by month

---

(b) While in the continental United States, its Territories and possessions, on leave, the service of any officer or employee shall be available for such work or duties in the Department or elsewhere as the Secretary may prescribe, but the time of such work or duties shall not be counted as leave."

6. Section 933 of the Foreign Service Act of 1946 corresponded to the provisions of existing law except that the Secretary was authorized to order an officer or employee to return to this country after two years abroad instead of three. This change was made not only to effect one of the "prime objectives" of the Act, *i. e.*, reorientation, but also for medical reasons for personnel stationed at "tropical or unhealthful posts." H.R.Rep.No.2508, 79th Cong., 2d Sess. 139 (1946). The period has since been shortened to 18 months. 22 U.S.C. § 1148, *supra*, note 5.

7. The full text of this regulation, as well as other regulations contained in the Foreign Affairs Manual and Foreign Service Manual, are quoted at length in the Tax Court's opinion below. 52 T.C. 378, 380–382 (1969).

8. *See* note 7.

and year. It also states that in order to justify a recommendation for deferral of home leave " * * * specific and considered reasons *shall* be given. Unspecified 'personal reason' or 'post needs' are not considered sufficiently compelling for the Department to consider *requests for exceptions to established policy.*" (Emphasis supplied). Moreover, if total avoidance was allowed, it would be inconsistent with the legislative purpose in providing for mandatory home leave in the first place.

To be sure, home leave is akin to a "vacation." In fact, that is probably what Congress intended. By what better method could a foreign service officer reorient himself with the American way of life in a short period of time than by osmosis, through travel, observation, reading, and communication with people, unburdened by the mundane duties of his everyday job?[9] The Department realizes direct, albeit intangible, benefits in terms of the effectiveness of its employees by virtue of just such "vacations."

However, the fact that both the Department and its foreign service officers, and probably Congress as well, view home leave to be in the nature of a vacation, does not alter the fact that it was also a compulsory job requirement. Unlike other taxpayers, Stratton did not have a choice as to where he could spend a substantial portion of the family treasury. He did not have the option of investing his money or spending it on a new car, a boat, a trip to another country abroad, or an expensive hobby. Instead, he was mandatorily required to take a vacation in the United States. It may not be a particularly onerous burden to many foreign service officers, but it still is an unavoidable expense imposed by the employer and by statute for reasons pertaining directly to the employee's trade or business.[10]

Thus, we hold that the travel expenses, including food and lodging, attributable solely to taxpayer Bruce Cornwall Stratton while he was on home leave were related primarily to his trade or business as a foreign service officer within the meaning of § 162(a), Int.Rev. Code of 1954.[11] We feel constrained to add, however, that implicit in our decision in this instance is the fact that it was the Congress that has determined to require the travel involved. In the context of a private employer's requirement that certain executives travel on leave to various countries in order to better perform their duties, such a re-

---

9. Treas.Reg. § 1.162–2(b) (2) (1958) provides that the amount of time spent on personal activity compared to the amount spent on activities directly relating to the taxpayer's trade or business is an important factor in determining the nature of the trip. The test, however, is not very helpful in the context of this case because Stratton's single activity, home leave traveling, has both personal and business-related facets simultaneously. Renewing his knowledge of American life is directly related to his trade or business, but it is primarily achieved through personal activities like vacation traveling.

10. The convention cases, Rudolph v. United States, 291 F.2d 841 (5th Cir. 1961), cert. dismissed, 370 U.S. 269, 82 S.Ct. 1277, 8 L.Ed.2d 484 (1962), and Patterson v. Thomas, 289 F.2d 108 (5th Cir. 1961), relied upon by the Tax Court and the Commissioner, are distinguishable. In those caess it was held that the expenses of convention pleasure trips to far away cities which were in the nature of a bonus for past services constituted income to the employee which was not deductible as an ordinary and necessary business expense. In neither case was the employee confronted with a legislative mandate to take the trip.

11. As mentioned at the outset, Stratton was on home leave part of the time and on annual leave the remainder. This is in accordance with regulations which allow such a combination in order to provide an adequate period of leave in the United States since thirty days leave time is the minimum that the Secretary will authorize to be taken in this country. Foreign Service Manual, §§ 451, 453.42. *See* note 7, *supra.* The deduction allowed herein applies only to the amount of *home leave* spent in this country (or thirty days, whichever is longer). It does not apply to expenses incurred while on *annual leave* in excess of the 30-day limitation.

quirement significantly becomes more suspect as a device for tax avoidance than would a similar requirement imposed on government employees by the Congress of the United States.

■ The expenses attributable to Mrs. Stratton and the children, however, are not deductible. The income tax regulations provide that when a taxpayer's wife and other members of the family accompany him on a trip, expenses attributable to their travel are not deductible unless it can be adequately shown that their presence on the trip has a "bona fide business purpose" over and above the performance of incidental services. Treas.Reg. § 1.162, 2(c) (1958). Their expenses must be ordinary and necessary in connection with the business of Mr. Stratton, and not ordinary and necessary in connection with the business of his employer. United States v. Disney, 413 F.2d 783, 786–787 (9th Cir. 1969). Such a showing was not made in the Tax Court below.

Stratton testified that an employee's family accompanies him on home leave as a matter of practice in all cases. He further stated that, since the spouse frequently has more "public relations" work than the employee, her reorientation is also important. R.T. 11. No other evidence was offered in support of these statements.

Mrs. Stratton and the children are not employed by the Department. There is no mandatory requirement either by statute or regulation, that they accompany the employee on home leave. The reason that the family customarily does accompany the employee is no doubt due in large measure to the fact that the Secretary of State is authorized to pay their travel expenses to and from this country. 22 U.S.C. § 1136 (1964). However, the fact that these expenses are so paid does not clearly indicate that the Department, as a matter of policy, or that Congress in adopting § 1136, felt that the family's reorientation to the American way of life was necessary to the conduct of Stratton's trade or business as a foreign service officer. At best, it represents an accommodation by the Department to enable the family to fulfill its *personal* needs in reacquainting itself with the homeland at the same time that the employee is renewing his knowledge for business reasons.[12] Finally, the asserted "public relations" duties of Mrs. Stratton are unspecified and, without further support in the record, must be considered to be incidental to her husband's business within the meaning of Treas.Reg. § 1.162–2(c), *supra*.[13]

The judgment of the Tax Court is reversed and the case is remanded for recomputation of taxpayers' income tax deficiency in accordance with this opinion.

BROWNING, Circuit Judge (dissenting):

I would affirm the Tax Court on the basis of its determination, 52 T.C. 378 (1969), that the primary purpose of Mr. Stratton's "home leave" was to provide him with a vacation. The Tax Court properly relied upon Rudolph v. United States, 291 F.2d 841 (5th Cir. 1961), cert. dismissed, 370 U.S. 269, 82 S.Ct. 1277, 8 L.Ed.2d 484 (1962), in dismissing petitioners' claim. See also Patterson v. Thomas, 289 F.2d 108 (5th Cir. 1961).

12. The question was not raised, nor do we decide, whether the payment of travel expenses for a foreign service employee's family constitutes income to the taxpayer within the meaning of § 61 of the Int. Rev.Code of 1954. *Cf.* United States v. Gotcher, 401 F.2d 118 (5th Cir. 1968).

13. This case is different from United States v. Disney, 413 F.2d 783 (9th Cir. 1969), where there was an express company policy which required corporate executives to take their wives with them on extended business trips to enhance the company's "image" and where the record was replete with examples whereby the wife's public relations duties served her husband's business purpose in making the trip.

The compulsory nature of "home leave" is only one factor in determining whether Mr. Stratton's traveling expenses while on such leave were "in the pursuit of a trade or business." All the circumstances of each case are to be considered.

For example Treas.Reg., § 1.162–2(b) (2) (1958), provides:

"The amount of time during the period of the trip which is spent on personal activity compared to the amount of time spent on activities directly relating to the taxpayer's trade or business is an important factor in determining whether the trip is primarily personal."

As the Tax Court noted, it is conceded that during "home leave" Mr. Stratton "was free to travel where he chose and to do as he pleased; he was not subject to control by his employer." It is uncontroverted that while on "home leave" Mr. Stratton performed no official acts in his capacity as a State Department foreign service officer. Mr.

Stratton could not remember specifically what he did during his "home leave." He testified, however, that to the best of his recollection, "I spent part of the time in the East and part time in the West, as I recall, and part of the time that I spent in the East I spent with my wife's family, and part of the time I spent traveling with my wife." In short, all "of the time during the period of the trip [was] spent on personal activity" and none "on activities directly relating to the taxpayer's trade or business."

"[T]he nature of the trip must be determined from the individual taxpayer's point of view, rather than from the viewpoint of his employer." Patterson v. Thomas, *supra*, 289 F.2d at 112. *See also* United States v. Disney, 413 F.2d 783, 787 (9th Cir. 1969). On this record, it cannot be said that the Tax Court was clearly wrong in finding that from Mr. Stratton's point of view the primary purpose of "home leave" was personal pleasure.