### David I. and R. Lee Hitchcock, Petitioners v. Commissioner of Internal Revenue, Respondent

Docket No. 8866-73.    Filed August 31, 1976.

*Murray J. Belman,* for the petitioners.
*Robert E. Dallman,* for the respondent.

Wiles, *Judge:* Respondent determined a deficiency of $808.16 in petitioners' 1972 income tax. The primary issue for decision is whether David I. Hitchcock (hereinafter petitioner), a Foreign Service information officer, may deduct expenditures for food, lodging, and transportation while in the United States on "home leave" as ordinary and necessary expenses incurred while away from home in pursuit of a trade or business within the meaning of section 162(a)(2).[1] Whether all such claimed expenditures were adequately substantiated under sections 162 and 274 is also in issue.

### FINDINGS OF FACT

Petitioner and R. Lee Hitchcock, husband and wife, lived in Chevy Chase, Md., when they filed their petition herein; Chevy Chase was their legal residence at that time. They timely filed their joint 1972 Federal income tax return with the District Director of Internal Revenue, Baltimore, Md.

Petitioner was employed by the United States Information Agency (hereinafter USIA) in 1972 as a Foreign Service information officer. During that year, petitioner, his wife, and their four

---

[1] Statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.

children resided in Tokyo, Japan, where petitioner had been assigned by USIA in 1970.

Petitioner and his family returned to the United States in June of 1972. Air fare expenses of the family were paid by USIA.

From July 26, 1972, through August 3, 1972, petitioner was on "annual leave" from his duties with USIA. From August 4, 1972, through August 31, 1972, petitioner was on "home leave," as defined in the Department of State Foreign Affairs Manual (hereinafter Foreign Affairs Manual).[2] Petitioner and his family engaged in the following activities while on home leave:

| Date | Activity |
| --- | --- |
| Aug. 4-17 | Rented a cottage in New London, N.H. (one child was not there for 7 days). |
| Aug. 17 through part of Aug. 18 | Mrs. Hitchcock and all four children continued to stay in New London. Petitioner drove a rented car back to Washington, D.C., and flew back to New London. |
| Part of Aug. 18 through part of Aug. 20 | Remained in New London. |
| Part of Aug. 20 | Drove to Salem, Mass. |
| Aug. 21 | Drove to Boston, then flew to Denver, Colo. Toured Denver in a rented car, stopping at the U.S. Mint and a zoo. Flew to Jackson Hole, Wyo. |
| Aug. 22 through part of Aug. 28 | Stayed at Trail Creek Ranch in Wilson, Wyo. |
| Part of Aug. 28 | Left Wilson, Wyo., drove a rented car to Yellowstone National Park, and stayed there that night. |
| Aug. 29 through part of Sept. 1 | Toured Glacier National Park; stayed there 3 nights. |
| Sept. 1 | Left Glacier National Park; ultimate destination was Tokyo, Japan, flying from Kalispell, Mont. via Seattle, Wash. |

Air fare expenses of the family on the return trip to Tokyo were paid by USIA. The only expenses USIA paid for the entire trip were the family's round trip air fares to and from Tokyo to

---

[2] Except where specifically provided for by statute, the Foreign Service Act of 1946, as amended, and other statutes applicable to Foreign Service officers are applicable to Foreign Service information officers. Act of Aug. 20, 1968, Pub. L. 90-494, 82 Stat. 812, 22 U.S.C. sec. 1230. The Foreign Affairs Manual is thus applied to both groups.

this country.[3]

Petitioner seeks to deduct only expenditures incurred for himself; no attempt has been made to deduct expenses allocable to his family. Petitioner claims that the following expenses incurred for himself while on home leave were deductible:

| | | |
|---|---|---|
| (a) | $126 | Food. |
| (b) | 29 | New Hampshire cottage rental—Aug. 3 through 20. |
| (c) | 227 | Auto rental—Aug. 3 through 18. |
| (d) | 30 | Air fare to Boston from Washington—Aug. 18. |
| (e) | 89 | Auto rental—Aug. 18 through 20. |
| (f) | 19 | Auto rental—Aug. 21. |
| (g) | 216 | Trail Creek Ranch lodging—Aug. 22 through 28. |
| (h) | 162 | Auto rental—Aug. 27 through 31. |
| (i) | 13 | Yellowstone National Park lodging—Aug. 28. |
| (j) | 39 | Glacier National Park lodging—Aug. 29 through 31. |
| | 950 | |

Respondent concedes that amounts specified in (b), (c), (e), (f), (g), and (i) were expended for the purposes designated, but contests whether the remaining amounts were so expended. Petitioner submitted only his own testimony as to such expenditures, except for item (j), for which a check stub was also submitted.

The Foreign Affairs Manual provided as follows during 1972:

432 *Granting Annual Leave*
432.1 *Purposes*
Annual leave is provided and used for two general purposes which are:
a. To allow every employee an annual vacation period of extended leave for rest and recreation; and
b. To provide periods of time-off for personal and emergency purposes.
These absences may involve such matters as a death in the employee's family, religious observances, attendance at conferences or conventions, securing a driver's permit, or other personal business which can be disposed of only during the time in which the employee would ordinarily be working. (These are not intended to be exclusive listings of the purposes or the kinds of absences for which annual leave is approved.)
\* \* \*

433.6 *Annual Leave in Lieu of Home Leave*

---

[3] Authorization for such payment was provided by sec. 911 of the Foreign Service Act of 1946, as amended, ch. 957, tit. IX, sec. 911, 60 Stat. 1026, now 22 U.S.C. sec. 1136:
The Secretary may, under such regulations as he shall prescribe, pay—
(1) the travel expenses of officers and employees of the Service, including expenses incurred while traveling pursuant to orders issued by the Secretary in accordance with the provisions of section 1148 of this title with regard to the granting of home leave;
(2) the travel expenses of the members of the family of an officer or employee of the Service when \* \* \* accompanying him on authorized home leave \* \* \*

At the written request of the employee, annual leave * * * may be used for leave spent in the United States at Government expense. The request for such substitution will be made at the beginning of a period of home leave or within 5 days after return to duty at the post or to a position in the United States, and no change will be permitted thereafter. Under no circumstances may annual leave be substituted at the end of the leave year for periods previously charged to home leave in order to avoid forfeiture of annual leave.

* * *

**450 HOME LEAVE**

**451** *General*

**451.1** *Authority*

The following authorities govern home leave:

a. 5 U.S.C. 6305 provides that [Civil Service] officers and employees may be granted leave of absence at a rate not to exceed 1 week for each 4 months of continuous service outside the United States * * * for use in the United States

* * *

b. Section 933(a) of the Foreign Service Act of 1946, as amended, provides that * * * USIA may order to the United States, its territories and possessions, on statutory leave of absence any officer or employee of the Service who is a citizen of the United States, upon completion of 18 months' continuous service abroad and shall so order as soon as possible after completion of 3 years of such service.

* * *

**451.3** *Definitions*

* * *

a. *Creditable Service Abroad* for the purpose of home leave accrual means service as an employee of any agency of the Federal Government at a post of duty outside the United States * * *

b. *Home leave* means leave * * * earned by service abroad for use in the United States * * *

* * *

**454** *Granting Home Leave*

**454.1** *Policy*

**454.1-1** *Eligibility*

* * * USIA * * * may grant home leave, or combined home leave and annual leave with travel at Government expense to any employee who is a citizen of the United States:

a. After he has completed at least 18 months of continuous service abroad and as soon as possible after the completion of 3 years of such service in accordance with his tour of duty. * * *

b. When it is contemplated that he will return to service abroad immediately or upon completion of an assignment in the United States. * * *

**454.1-2** *Minimum Time Requirement*

As a general rule, 45 workdays of leave, including, if necessary, annual leave, but exclusive of transit time, may be approved.

Of this time not less than 20 workdays of leave will be taken in the United States * * *. Exceptions to the 20-day requirement may be made, based on the needs of the Service * * *

454.1-3 *Interruption of Home Leave*

Home leave is taken in one continuous period. However, this period may be interrupted for temporary duty under circumstances such as but not necessarily limited to the following: participation in the * * * agency's schedule of public speeches, the community relations program, training programs, etc. * * *

454.2 *Home Leave in Connection with an Assignment in the United States*

454.2-1 *Home Leave Before Next Assignment*

If an employee's next assignment is in the United States * * * and he is eligible for and requests home leave, the leave is to be taken before he reports for duty.

An employee transferred from abroad and assigned to the United States will be granted not to exceed 15 workdays of home leave following official consultation, if any. * * *

* * *

Annual or sick leave to the employee's credit or LWOP, as appropriate, may be granted in addition to home leave. * * *

454.2-2 *Deferred Home Leave*

When home leave is authorized and a situation arises which requires the employee to report for duty immediately, the appropriate office may authorize a deferral of the employee's home leave. In such instances, the home leave must be taken in one continuous period except as indicated in section 454.1-3 and must be completed within six months following the date on which the employee reports for duty.

454.3 *Annual Leave in Lieu of Home Leave at Government Expense*

Headquarters of * * * USIA may grant current accrued and accumulated annual leave, in lieu of home leave, for use in the United States * * * with travel at Government expense to any employee recruited abroad who has completed the required period of continuous service abroad but who has not yet accrued any home leave.

* * *

454.5 *Restrictions on Home Leave*

454.5-1 *Leave Used En Route to the United States*

Home leave, as distinguished from annual leave, may be used only in the United States * * *

454.5-2 *Combining Home and Annual Leave*

An employee will not be granted home leave in excess of the amount to his credit on the date of his departure from the post on home leave. However, current accrued and accumulated annual leave may be granted in combination with home leave in order to provide an adequate period of leave. * * *

* * *

454.5-4 *Return to Duty Abroad*

Home leave will be granted only when it is planned that the employee will complete another tour of duty abroad, either immediately or upon completion of an assignment in the United States * * *

454.5-5 *Payment at Separation*

Unused home leave may not be made the basis of any terminal leave or for any lump sum payment.

* * *

455.3 *Days Not Charged*

a. The time spent in delivering a speech before an outside organization at the request of * * * USIA is considered performance of duty. Therefore, home leave will not be charged for a day on which an employee fulfills one or more speaking engagements while on home leave. In these circumstances, the period of home leave should be extended for the number of days for which home leave is not charged * * *

The Foreign Affairs Manual also provided for varying employee home leave "earning rates," depending on whether the employee would agree to accept assignment anywhere, whether the employee served with a "U.S. mission to a public international organization" or not, and whether the employee served at a post for which an increased "post differential" was authorized. "Accrual" of home leave under those earning rates resulted in "crediting" of such leave to the individual employee's "leave account."

The timing of home leave assignments is generally based upon both convenience of the employee and needs of the Service at that time. After receiving a routine telegram authorizing the taking of home leave, an employee may have that authorization reviewed or reconsidered if there are important reasons for such reconsideration. Similarly, home leave can be deferred if the needs of the Service require it. But deferral of home leave due to these factors is not indefinite; such deferrals cannot result in total avoidance of home leave by particular employees.

It is unheard of within the Service for a Foreign Service information officer to refuse to take home leave, notwithstanding the reluctance of some officers to take it because of expenses they incur while in the United States.

USIA imposed no requirements or restrictions upon petitioner's activities while he was in the United States on home and annual leave during the summer of 1972. While on home leave, petitioner thus performed no official functions or duties. While on both home and annual leave, petitioner and his family engaged in vacation-like activities; the nature of their activities while petitioner was on the two types of leave was indistinguishable.

OPINION

Petitioner, a United States Foreign Service information officer, was stationed in Japan during 1972. He spent 28 days on

home leave in the United States during that year. Home leave is granted pursuant to the Foreign Service Act of 1946, ch. 957, tit. IX, sec. 933(a), 60 Stat. 1028, 22 U.S.C. sec. 1148(a), as amended, which provided during 1972 as follows:

> The Secretary may order to the continental United States, its territories and possessions, on statutory leave of absence any officer or employee of the Service who is a citizen of the United States upon completion of eighteen months' continuous service abroad and shall so order as soon as possible after completion of three years of such service.

Petitioner deducted expenditures attributable solely to himself, not his family, while on home leave in 1972. These expenditures were for lodging, meals, and car rentals while in the United States. The primary issue for decision is whether such expenditures constituted ordinary and necessary expenses incurred in carrying on his trade or business as a Foreign Service information officer; specifically, section 162(a)(2) allows deductions for "traveling expenses * * * while away from home in the pursuit of a trade or business."[4] Respondent contends such expenditures constituted nondeductible personal, living, or family expenses within the meaning of section 262.[5] See Rev. Rul. 68-513, 1968-2 C.B. 114.

Respondent does not deny that petitioner was "away from home" within the meaning of section 162(a)(2), as his home for this purpose was clearly his duty station in Tokyo, Japan. *Truman C. Tucker,* 55 T.C. 783 (1971); *Mort L. Bixler,* 5 B.T.A. 1181 (1927). See also Rev. Rul. 60-189, 1960-1 C.B. 60. Also, respondent does not contend that the claimed expenditures were unnecessary while on home leave or unreasonable. The sole question is whether the expenditures were incurred "in the pursuit of a trade or business."

---

[4] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

* * *

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business * * *

[5] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

In discussing this requirement, the Supreme Court stated in *Commissioner v. Flowers,* 326 U.S. 465, 470, 474 (1946), rehearing denied 326 U.S. 812 (1946), as follows:

The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

\* \* \*

Business trips are to be identified in relation to business demands and the traveler's business headquarters. The exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors.

Similarly, as we stated in *Mort L. Bixler,* 5 B.T.A. 1181, 1184 (1927), the claimed deductions must be incurred "in the prosecution, conduct, and carrying on of a trade or business."

Petitioner contends that home leave is required by his employer and Congress and that its compulsory nature requires a finding that such expenditures were incurred in pursuit of a trade or business. Petitioner asserts that he would not have incurred the substantial expenses necessarily incident to home leave in the absence of this requirement.

This issue was also raised in *Bruce Cornwall Stratton,* 52 T.C. 378 (1969). In *Stratton,* taxpayer, a Foreign Service officer, claimed deductions for travel expenses incurred by himself and his family while on home leave. This Court found that the primary purpose of the Department of State in granting taxpayer home leave was to give him a vacation; similarly, from taxpayer's point of view home leave was regarded as a pleasure trip in the nature of a vacation. Furthermore, we found that the record presented did not support a finding that home leave was compulsory upon taxpayer therein. Finally, we found the rationale of *Rudolph v. United States,* 291 F.2d 841 (5th Cir. 1961), cert. dismissed 370 U.S. 269 (1962), rehearing denied 371 U.S. 854 (1962), persuasive. In that case, employer-paid expenses for a business convention-pleasure trip which was a bonus for past services constituted taxable income to the taxpayer, and taxpayer could not deduct the trip's expenses as ordinary and necessary business expenses. The deductions were denied essentially because the trip was a pleasure trip in the nature of a vacation, as this Court found was true in *Stratton.* This Court

accordingly held the home leave expenditures in issue in *Stratton* were not deductible business expenses.

On appeal, the United States Court of Appeals for the Ninth Circuit reversed. *Stratton v. Commissioner,* 448 F.2d 1030 (9th Cir. 1971). That court found that taxpayer was indeed compelled to take home leave. The court stressed the mandatory language— "shall order"—of the statutory authorization for home leave and also stressed similar language in Department of State regulations issued thereunder. The court also concluded that possible deferral of home leave for exigent circumstances could not result in indefinite deferral of home leave, in contrast to this Court's conclusion that home leave could be deferred for specified reasons. The Ninth Circuit acknowledged that home leave is "akin" to a vacation but found that Congress intended to reorient employees to the American way of life[6] while on home leave and that the Department of State realized "direct, albeit intangible, benefits in terms of the effectiveness of its employees by virtue of just such 'vacations.' " 448 F.2d at 1033. The court concluded, however, that although home leave was in the nature of a vacation, its status as a compulsory job requirement constituted "an unavoidable expense imposed by the employer and by statute for reasons pertaining directly to the employee's trade or business." 448 F.2d at 1033 (fn. ref. omitted). The court distinguished *Rudolph v. United States,* 291 F.2d 841 (5th Cir. 1961), cert. dismissed 370 U.S. 269 (1962), rehearing denied 371 U.S. 854 (1962), and the similar case of *Patterson v. Thomas,* 289 F.2d 108 (5th Cir. 1961), cert. denied 368 U.S. 837 (1961), rehearing denied 370 U.S. 966 (1962), on the absence of a legislative mandate to make the company trips there in issue; in contrast, the court found that the congressional mandate for home leave was obviously not in furtherance of a tax-avoidance purpose, and accordingly the good-faith necessity of home leave as a business requirement was unquestionable.

---

[6] Sec. 111(2) of the Foreign Service Act of 1946, ch. 957, tit. IX, sec. 111(2), 60 Stat. 999, 22 U.S.C. sec. 801(2), as amended, states:

The Congress hereby declares that the objectives of this Act are to develop and strengthen the Foreign Service of the United States so as—
\* \* \*

(2) to insure that the officers and employees of the Foreign Service are \* \* \* aware of and fully informed in respect to current trends in American life; \* \* \*

See also 92 Cong. Rec. 9587, 9589 (1946).

Of the three-judge panel which decided *Stratton,* Circuit Judge Browning dissented on the basis of this Court's determination that the primary purpose of taxpayer's home leave was to provide him with a vacation. 448 F.2d at 1034. Judge Browning noted that the compulsory nature of home leave was only one factor in determining whether home leave expenses should be deductible and that all circumstances of each case should be considered. He accordingly concluded that the primary purpose of home leave from taxpayer's point of view, as a vacation, should have been fatal to his cause.

After considering the mandatory statutory language, the legislative history,[7] and the record in this case, we have concluded that home leave is indeed compulsory. Petitioner, however, would equate such a finding with automatic deductibility of the claimed expenses. We disagree. These expenses remain so inherently personal that we cannot conclude they were incurred "in pursuit of a trade or business." That an expenditure must be incurred to satisfy a compulsory job requirement does not mean that it is automatically deductible.

This point is best illustrated by *Richard Walter Drake,* 52 T.C. 842 (1969). In that case, taxpayer was an enlisted man in the United States Army who was required to have his hair cut at least every 2 weeks. Taxpayer argued that but for this employment he would not have had his hair cut so often. This Court rejected a "but for" test as a sole determinant of deductibility under section 162. We found that expenditures for such personal grooming expenses as haircuts were inherently personal in nature and could not be considered business expenses. Certainly the element of compulsion in that case was at least as strong as in this case.

In *Drake* this Court also found that the haircut requirement was directed toward maintenance of a high standard of taxpayer's personal appearance and was not directed towards

---

[7] H. Rept. No. 2508, 79th Cong., 2d Sess. 10 (1946), states as follows:

"*Re-Americanization*"

There is perhaps no phase of Foreign Service administration about which there is more general agreement than that connected with the problem of insuring that Foreign Service personnel should come to the United States as often as possible to renew their knowledge of development in the United States and their feeling for the American way of life. The new bill, as noted above, provides compulsory home leave after 2 years' service abroad as against the present 3 years * * *

The compulsory service term was later returned to 3 years by the Foreign Assistance Act of 1961, Pub. L. 87-195, 75 Stat. 464, 22 U.S.C. sec. 1148.

accomplishment of his employment duties. Similar analysis is applicable herein. Petitioner performed no duties while in the United States; in effect, he took a vacation in the United States.[8]

We believe that vacation expenses, which are in fact in issue here, are so inherently personal and unrelated to the conduct of a trade or business as to be nondeductible, notwithstanding the compulsory origin of home leave. Petitioner spent his entire time in the United States engaged in vacation-like activities, e.g., renting a cottage in New Hampshire, touring Yellowstone and Glacier National Parks, staying at a ranch in Wyoming, and visiting a United States mint and a zoo.

Petitioner contends, however, that home leave does not constitute a "true" vacation because, in addition to being compulsory, home leave can generally only be taken within the United States: employees on home leave do not have the option of staying at their duty post locations and thus avoiding travel to the United States. These restrictions are insufficient to remove home leave from the status of a vacation. Employees on home leave have complete freedom as to how, when, and where they and their families will spend their time in various activities while in the United States. Restriction to the entire United States is hardly so onerous as to deny employees substantial freedom of choice and discretion in enjoying their vacations, and the argument that the employees are spending money they would not have spent "but for" their jobs is unpersuasive, as demonstrated above.

We note also that the applicable Foreign Affairs Manual regulations, quoted in the Findings of Fact, repeatedly indicate that home leave is indistinguishable from Government annual leave and that it essentially constitutes an employee benefit in the nature of a vacation. Employees "earn" or "accrue" home leave. Earning rates depend upon whether the employee would agree to accept assignment anywhere, upon the nature of the assignment, and upon a differential for various posts of duty. The accrual of home leave is thus not based upon its avowed purpose, i.e., to reorient employees to American life.[9] On the contrary, the different accrual rates function as an inducement to the

---

[8] See *Sparkman v. Commissioner*, 112 F.2d 774, 777 (9th Cir. 1940), affg. a Memorandum Opinion of the Board of Tax Appeals, and *Paul Bakewell, Jr.*, 23 T.C. 803, 805 (1955), for examples of other cases dealing with the inherently personal-nondeductibility concept.

[9] See n. 7 *supra*.

employee by granting additional vacation time in return for specified employee commitments.

The Foreign Affairs Manual regulations also indicate that an employee is eligible for and may request home leave even if his next assignment is in the United States, which is again inconsistent with the avowed purpose of home leave to reorient employees who have been abroad before resuming their duties abroad. Employees do not need reorientation in the United States on home leave for a foreign tour of duty if their next duty assignment is in the United States. Similar analysis applies to home leave taken after a tour of duty in the United States and before another tour of duty abroad.

Furthermore, annual leave may be substituted for home leave upon written request of the employee. Annual or sick leave or leave without pay may also be granted in addition to home leave, further indicating the interchangeability of these types of leave.

Finally, employees are taken off home leave status when performing official duties which interrupt home leave. Employees thus perform no official duties while on home leave.

Taking all these factors together, the regulations indicate that no actual assigned duties are performed while on home leave and that administration of the home leave program is more directed toward giving a vacation than to reorientation to American life. We note also that employees are not reimbursed for expenses incurred while on home leave, whereas such expenses are usually paid to Government employees while on Government business. Cf. 5 U.S.C. sec. 5702 (1966).

We accordingly conclude that home leave does not constitute an activity engaged in while "in the pursuit of a trade or business." The rationale of *Rudolph v. United States, supra,* and *Patterson v. Thomas, supra,* is still applicable to this result, as those decisions turned on the nature of the trips therein as pleasure trips, and home leave is also a pleasure trip, in the nature of a vacation; that Congress is the source of the compulsion that home leave be taken does not make home leave any less a vacation.

We therefore hold that expenditures incurred by petitioner for travel expenses while on home leave did not constitute deductible trade or business expenses incurred in pursuit of a

trade or business within the meaning of section 162(a)(2).[10] Since appeal in this case will lie to the United States Court of Appeals for the Fourth Circuit, we need not follow the opinion of the United States Court of Appeals for the Ninth Circuit in *Stratton* in reaching this result. *Jack E. Golsen,* 54 T.C. 742, 757 (1970), affd. on other issues 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971).

*Decision will be entered for the respondent.*

Reviewed by the Court.