**David I. and R. Lee HITCHCOCK, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 76–2330.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1978.

Decided June 12, 1978.

---

**3.** *See United States v. Press,* 401 F.2d 499 (3d Cir. 1968).

Murray J. Belman, Washington, D. C., for appellants.

Richard Farber, Atty., Tax Division, Dept. of Justice, Washington, D. C. (Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews and Jonathan S. Cohen, Attys., Tax Division, Dept. of Justice, Washington, D. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WIDENER and HALL, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

This is an appeal from a determination of the Tax Court upholding the Commissioner's assessment of an income tax deficiency for 1972 in the amount of $593 against David I. Hitchcock. 66 T.C. 950 (1976). The deficiency arose from the disallowance of deductions taken by Hitchcock (taxpayer) for expenditures made by him as a Foreign Service Information Officer for food, lodging and transportation—for himself only—while on mandatory "home leave" in the United States from Japan.

It is conceded by the Commissioner that these outlays were for "ordinary and necessary expenses" within the meaning of § 162(a)(2), Internal Revenue Code.[1] The sole point of contest is whether these sums were incurred in pursuit of his business.[2]

Home leave is periodically *ordered* by law for all Foreign Service Officers stationed abroad, so that they may and will reorient themselves to the American ways of life. Section 1148 of the Foreign Service Act of 1946, ch. 957, Title IX, sec. 933(a), 60 Stat. 1028, 22 U.S.C. § 801, et seq.[3] The Tax Court agrees: "After considering the mandatory statutory language, the legislative history, and the record in this case, we have concluded that home leave is indeed compulsory." 66 T.C. at 959, footnote omitted. However, the Court held that the instant expenses were so "inherently personal and unrelated to the conduct of a trade or business" as to be nondeductible. 66 T.C. at 960. Judgment went for the Commissioner September 3, 1976. We reverse.

As a Foreign Service Information Officer, Hitchcock was assigned in 1970 to official duty in Tokyo, Japan. His family ac-

---

[1] In the 1972 taxable year, § 162(a), Int.Rev. Code of 1954, read as follows:

"SEC. 162. Trade or business expenses. (a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
\* \* \* \* \* \*
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business;"
\* \* \* \* \* \*

[2] The amount originally claimed was $950.00, but on the Commissioner's objection that $357.00 thereof had not been substantiated under Tax Code Section 274(d), the taxpayer has not pressed his suit for the items of the $357.00, leaving on appeal only the remaining $593.00 of deductions.

[3] This section provides in pertinent part:

"§ 1148. Return of personnel to United States, its Territories and possessions on leaves of absence
(a) The Secretary may order to the continental United States, its territories and possessions, on statutory leave of absence any officer or employee of the Service who is a citizen of the United States upon completion of eighteen months' continuous service abroad and *shall so order* as soon as possible after completion of three years of such service." (Accent added.)

companied him. In 1972 he was ordered to return to the United States on home leave, and they all flew back at Government expense in June 1972. From August 4 until September 1, 1972 he was on home leave. During this interval he engaged in the following incidents with these expenses:

| | |
|---|---:|
| (a) Cottage rental—August 4 through 20 | $ 29 |
| (b) Auto rental—August 4 through 18 | 227 |
| (c) Auto rental—August 18 through 20 | 89 |
| (d) Auto rental—August 21 | 19 |
| (e) Trail Creek Ranch lodging—August 22 through 28 | 216 |
| (f) Yellowstone National Park lodging—August 28 | 13 |
| TOTAL | $593 |

These expenditures are acknowledged by the Commissioner as "ordinary and necessary". The list includes the costs, first, of a stay of some two weeks in a rented New Hampshire cottage; then taxpayer drove a rental car to Washington, D. C.; next was a drive through Massachusetts to Boston; next a tour of Denver, visiting the United States Mint and a zoo; then six days' lodging at the Trail Creek Ranch in Wilson, Wyoming; further, a lodging for the night of August 28 at Yellowstone National Park; and finally, boarding a plane on September 1 for return to Tokyo.

Since these trips and stays concededly were "ordinary and necessary", the next question is whether the expenditures therefor were incurred *in the pursuit of a trade or business*. Considering the language of the law commanding home leave as well as the Congressional purpose of its enactment, we conclude that all of these items should be so classified. The Congress determined that this periodic return is essential to the duties of a Foreign Service Officer in a career or the *business* of representing the United States abroad. The Foreign Service Act itself announced:

"The Congress declares that the objectives of this chapter are to develop and strengthen the Foreign Service of the United States so as—

\* \* \* \* \* \*

(2) to insure that the officers and employees of the Foreign Service are *broadly representative of the American people* and are aware of and *fully informed in respect to current trends* in American life;" (Accent added.)

\* \* \* \* \* \*

Section 111(2) of the Foreign Service Act of 1946, ch. 957, Title I, § 111(2), 60 Stat. 999, 22 U.S.C. § 801(2). *See also* 92 Cong. Rec. 9587, 9589 (1946).

Further, the House Foreign Affairs Committee in considering this legislation reported:

". . . [O]ne of the prime objectives of the act . . . is to insure that the officers and employees of the Service shall return more often to the United States *to renew touch with the American way of life and so become better representatives of this country abroad.*" (Accent added.) H.Rept.No.2508, 79th Cong., 2d Sess. 139 (1946).

Also, the Congress was concerned about the "re-Americanization" of Foreign Service personnel stationed abroad as is re-emphasized in the legislative history of the Act:

" '*Re-Americanization*'

There is perhaps no phase of Foreign Service administration about which there is more general agreement than that connected with the problem of insuring that Foreign Service personnel should come to the United States as often as possible to renew their knowledge of developments in the United States and their feeling for the American way of life. The new bill, as noted above, provides compulsory home leave ·after 2 years' service abroad as against the present 3 years. . . ." [4] H.Rept.No.2508, 79th Cong., 2d Sess. 10 (1946).

The travels of the present taxpayer provided him opportunity to sense the trend of life throughout a large segment of the nation. The circumstance that it may have

---

4. The compulsory service term was later again fixed at 3 years by the Foreign Assistance Act of 1961, Pub.L. 87–195, 75 Stat. 464, 22 U.S.C. § 1148.

been pleasant or, indeed, have the flavor of a vacation does not negate its nature as an obligation. Surely, the Congress was aware of this pleasurable potential, but nevertheless *required* it of Foreign Service Officers. Discharge might well have followed a failure to comply with the practice. In obeying, the taxpayer was pursuing his professional employment. He was meeting his duty to its full extent when he did not confine his stay to his Maryland home. No matter how understandably enjoyable his visit in Maryland, it could not have provided him the opportunity either to share with his fellow Americans the knowledge he had gained of Japan, or to inform himself of the advances or other changes in life in this country, as broadly as did his travel in the New England and Western States.

Our view of this case is reinforced by *Stratton v. Commissioner*, 448 F.2d 1030 (9 Cir. 1971), especially in this from its opinion:

> "To be sure, home leave is akin to a 'vacation'. In fact, that is probably what Congress intended. By what better method could a foreign service officer reorient himself with the American way of life in a short period of time than by osmosis, through travel, observation, reading, and communication with people, unburdened by the mundane duties of his everyday job? The Department realizes direct, albeit intangible, benefits in terms of the effectiveness of its employees by virtue of just such 'vacations.'" *Id.* at 1033, footnote omitted.

We therefore conclude that home leave is an unavoidable expense exacted under law of an employee. Because the travel expenses, including food and lodging, attributable solely to David Hitchcock while he was on home leave relate primarily to his trade or business as a Foreign Service Officer, we hold they fall within the meaning of § 162(a), Int.Rev.Code of 1954. The judgment on appeal will be reversed and the case remanded to the Tax Court for entry of an order in accordance with this opinion.

Reversed and Remanded.