ARTURO P. ALCALEN AND WILHELMINA B. ALCALEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alcalen v. Commissioner
Docket No. 3599-82.
United States Tax Court
T.C. Memo 1984-334; 1984 Tax Ct. Memo LEXIS 342; 48 T.C.M. (CCH) 406; T.C.M. (RIA) 840334; June 28, 1984. Arturo P. Alcalen, pro se. Hugh M. Spall, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency of $1,115.20 in petitioners' 1978 Federal income tax. After concessions, discussed below, the issues for our decision are (1) whether various travel expenses incurred by petitioners are deductible, and (2) the amount of petitioners' allowable deduction for local transportation. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts *345 and exhibits attached thereto are incorporated herein by this reference. At the time they filed their petition in this case, Arturo P. Alcalen (Sgt. Alcalen) was stationed at Fort Lewis, Washington, and his wife, Wilhelmina B. Alcalen (Mrs. Alcalen), resided in San Francisco, California. Petitioners filed a joint Federal income tax return (Form 1040) for 1978. At the beginning of 1978, Sgt. Alcalen was an enlisted man in the United States Army, stationed in San Francisco. Sgt. Alcalen was awaiting orders that he believed would transfer him to Turkey, where his wife could not accompany him. In April 1978, Sgt. Alcalen took leave and flew to Italy with Mrs. Alcalen. Petitioners' trip to Italy had several purposes. First, Sgt. Alcalen wanted to spend time with Mrs. Alcalen to soothe her feelings about his pending transfer to Turkey. Petitioners also wanted to investigate contacts in Italy regarding their possible entry into the business of importing and exporting various internationally traded commodities. Petitioners did not meet any business contacts in Italy and instead spent their time vacationing in Rome, Florence, Naples, and Venice. Sgt. Alcalen was transferred to *346 Germany instead of Turkey. Mrs. Alcalen did not accompany him, because his remaining enlistment period was too brief for his wife and child to be permitted to travel at Government expense. Also Mrs. Alcalen was employed in San Francisco and her salary constituted a significant part of the family's total income. While in Germany, Sgt. Alcalen took leave, flew to California to visit Mrs. Alcalen, picked up his California tax returns, and returned to Germany. While Sgt. Alcalen was back in California on this trip, petitioners continued to investigate a possible business venture in international trading. At some point in the late spring or early summer of 1978, petitioners sent $10,000 to their agent in the Philippines to subscribe to the stock of a corporation that was intended to engage in international trading. In 1979, petitioners discovered that the stock had not been issued.Sgt. Alcalen still hopes the Philippine venture will prove to be a viable investment. While he was stationed in Germany, Sgt. Alcalen was authorized by his commanding officer to use his privately owned vehicle on Army business if Government transportation was not available. Sgt. Alcalen used his own vehicle *347 only when Government transportation was not available. Sgt. Alcalen was not reimbursed for his costs in using his own automobile in those instances. On their 1978 joint return, petitioners claimed the following deductions, all of which respondent disallowed: Item
Amount
Air fare, meals, and lodging
$2,139.29
Car expenses--standard mileage rate
2,707.35
Car towing
173.25
Car insurance and depreciation
1,686.32
Space rental/telephone share/long
distance calls
980.00
Home maintenance and repair cost
57.01
Bond for mortgage requirement
276.00
Fire insurance, mortgage requirement
108.00
Subsistence payment to Sgt. Alcalen's
mother in Philippines
1,320.00
Utility taxes (water, electric, telephone)
79.19
The first two items were listed on Form 2106 (Employee Business Expenses) and deducted as adjustments to gross income and the remaining items were listed as itemized deductions on Schedule A and deducted from adjusted gross income. The air fare, meals, and lodging are allocable 50 percent to petitioners' trip to Italy and 50 percent to Sgt. Alcalen's trip from Germany to California. Petitioners computed their automobile expense deduction under *348 the standard mileage rate claiming 77 percent business use. The car towing expense also reflects 77 percent of the total cost. Of this 77 percent business use, one-half is allocable to Sgt. Alcalen's use of his car on Army business and the remaining one-half is allocable to sgt. Alcalen's investigation of the possibility of entering the import-export business. Respondent now concedes that the portion of petitioners' automobile expense allocable to Sgt. Alcalen's use of his car on Army business is deductible. Respondent also concedes that petitioners have verified the amounts for cary towing, Insurance, and depreciation. Petitioners concede that they are not entitled to automobile expense deductions for both their actual costs (and depreciation) and the amount computed under the standard mileage rate, as claimed on their return. Petitioners also concede that the $1,320 they paid to Sgt. Alcalen's mother is not deductible. OPINION Deductions are a matter of legislative grace, and taxpayers must prove their entitlement to them. Deputy v. du Pont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Petitioners presented *349 no evidence regarding their claimed itemized deductions for "space rental/telephone share/long distance calls," "home maintenance and repair cost," "bond for mortgage requirement," "fire insurance, mortgage requirement," and "utility taxes." These items facially appear to be nondeductible personal expenditures. Sec. 262. [1] In any event petitioners have either conceded these items or have failed to carry their burden of proof. Accordingly, we sustain respondent's disallowance of these deductions. Rule 149(b); Rule 142(a). To the extent that petitioners' claimed travel and transportation expenses are allocable to their investigation of the import-export business, no deduction is allowable under either section 162 or section 212. At the time petitioners incurred those expenses, they were not engaged in that trade or business nor were they owners of, nor had any interest in, any income-producing asset. See Contini v. Commissioner,76 T.C. 447, 451-452 (1981); *350 Frank v. Commissioner,20 T.C. 511, 514 (1953). Petitioners' expenses, if not nondeductible personal expenses, were part of the capital cost of petitioners' investment in the Philippine trading company. No loss under section 165 is allowable; there was no closed transaction during the taxable year, nor was petitioners' investment worthless as of the end of 1978. Sec. 165(c)(2); sec. 165(g); sec. 1.165-1(b), Income Tax Regs.
The balance of petitioners' travel expenses relate to Sgt. Alcalen's trip to Italy with Mrs. Alcalen and his trip from Germany to California to see her. These trips may well have smoothed out whatever marital difficulties, if any, they were having because of Sgt. Alcalen's transfer overseas. We have carefully reviewed the various Army personnel regulations and similar materials that petitioners submitted. In so doing, we had the benefit of the testimony of Major Patrick P. Brown, an expert in military law on the staff of the Judge Advocate General, United States Army. We accept the fact that the Army exercises greater control over its soldiers' personal lives than does a civilian employer over its employees' personal lives. Nonetheless, *351 we do not believe that the minor marital difficulties to which Sgt. Alcalen testified, or even the divorce he may have feared, would bar his reenlistment or otherwise subject him to military discipline. Similarly, although Sgt. Alcalen might have forfeited his entitlement to leave had he not taken it, we do not believe that he could be disciplined or barred from reenlisting by refusing to accept leave. [2] The record does not indicate that Sgt. Alcalen was ordered or required to take leave, and the leave he actually took for the trips to Italy and from Germany may well have been leave granted at his own request. The fact that Sgt. Alcalen was still subject to certain Army regulations while on leave does not convert the expenses incurred during his leave into employee business expenses. Such expenses are inherently personal and nondeductible. Sec. 262. *352 Finally, respondent now concedes that the portion of the automobile expense deduction allocable to Sgt. Alcalen's use of his car on Army business is allowable. Although respondent concedes that petitioners have substantiated the portion of their actual expenses they claimed, [3] the amount calculated under the standard mileage rate is higher. Consequently, petitioners are entitled to an automobile expense deduction of $1,353.68. Petitioners have conceded that they are not entitled to deduct their insurance and depreciation in addition to the standard mileage rate deduction. However, under the standard rate method, petitioners are also entitled to deduct certain additional amounts actually incurred, such as parking and tolls. See Rev. Proc. 74-23, 1974-2 C.B. 476. We believe that petitioners' towing costs, which respondent has conceded were substantiated, also fall within this category. The amount petitioners claimed represents their total costs, limited to the same percentage (77 percent) of business use they used in computing their mileage. Since one-half of the mileage was allowable as allocable *353 for business use, we believe that $86.62, one-half of the towing charges, is similarly deductible as part of the employee business expenses to be taken as an adjustment to income above the line. We commend Sgt. Alcalen for his obvious loyalty to the Army and his considerable talents devoted to its service. We also commend Sgt. Alcalen for his capable presentation of his case. Although Congress has enacted certain provisions of the Internal Revenue Code in recognition of the contributions of our Nation's military personnel, see secs. 72(n), 112, 113, 122, 217(g), 692, 1034(h), 2201, and 7508, absent such special legislation, we must apply the tax laws equally to soldiers and civilians. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in question, and all references to "Rules" are to the Tax Court Rules of Practice and Procedure.↩
2. This case is plainly distinguishable from Stratton v. Commissioner,448 F. 2d 1030 (9th Cir. 1971), revg. 52 T.C. 378 (1969), and Hitchcock v. Commissioner,578 F. 2d 972 (4th Cir. 1978), revg. 66 T.C. 950 (1976). Both Stratton and Hitchcock↩ involved Foreign Service officers stationed overseas who were required by law and State Department regulations to take home leave. Although Sgt. Alcalen argued in general terms that the Army "required" him to go on leave, we are persuaded by Major Brown's testimony that Sgt. Alcalen could not be required to do so. Also the factual record simply does not show that Sgt. Alcalen was "ordered" or "required" to take the leave involved in the present case.
3. Petitioners claimed no deduction for gasoline, oil, or repairs.↩