Francis X. Heidl and Theresa J. Heidl v. Commissioner. Heidl's, Inc. v. Commissioner.
Heidl v. Commissioner
Docket Nos. 1021-62, 1022-62.
United States Tax Court
T.C. Memo 1964-7; 1964 Tax Ct. Memo LEXIS 328; 23 T.C.M. (CCH) 27; T.C.M. (RIA) 64007; January 17, 1964
*328 Richard Kilcullen, for the petitioners. Marie L. Garibaldi, for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Deficiencies in income tax of petitioners Francis X. Heidl and Theresa J. Heidl for 1958 and 1959 in the amounts of $835.93 and $71.88, respectively, and of petitioner Heidl's, Inc., for the fiscal year ending March 31, 1959 in the amount of $936.41 have been determined. All other items having been conceded on brief, the only issue to be decided is whether the payment by petitioner Heidl's, Inc., of the travel expenses of petitioner Theresa J. Heidl's trip to Europe is deductible by Heidl's, Inc., or constitutes a dividend to Theresa J. Heidl. Findings of Fact The stipulated facts are hereby found accordingly. Petitioners Francis X. Heidl (hereinafter referred to as petitioner) and his wife, Theresa J. Heidl (hereinafter sometimes referred to as Theresa), resided during 1958 and 1959, the taxable years in controversy, at 85 Silver Spring Road, Ridgefield, Connecticut. They filed their joint income tax return for 1958 with the district director of internal revenue for the Lower Manhattan district of New York; and they *329 filed their joint income tax return for 1959 with the district director of internal revenue for the Manhattan district of New York. Heidl's, Inc. (hereinafter sometimes referred to as the corporation), a New York corporation with its principal office at 44 Whitehall Street, New York 4, New York, is and has been since its incorporation in 1948 engaged in business as international shipping agents. In recent years, it has specialized in the movement of household goods. In 1958 and 1959 the officers of the corporation were: President
Petitioner
Vice-President
Francis X. Heldl, Jr.
Vice-President
William R. Wallace
Secretary
Joseph A. Tnumser
Treasurer
Alfred Armbruster Petitioner has been president of the corporation since its incorporation. Theresa has never been an officer or employee of the corporation. The directors of the corporation in 1958 and 1959 were petitioner, Theresa, Francis X. Heidl, Jr., E. E. Schwitzke, and William R. Wallace. Since its incorporation, all of the stock of the corporation has been owned as follows: Stockholder
No. of Shares
Theresa
97
Petitioner
3
Francis X. Heidl, Jr.
20
Eugenia T. Heidl
20 Theresa *330 purchased her stock with her own funds. In 1958 the stockholders of the corporation had only one meeting. As of 1958, petitioner had 56 years experience in the shipping field. As president of the corporation, he is most familiar with the business and has ultimate responsibility for its success or failure. In the fall of 1958, it was decided that Theresa should accompany petitioner to Europe. This decision was reached by a general understanding in the office when the matter was discussed. Petitioner and Theresa arrived in London on September 5, 1958 and returned to New York from Paris on November 14, 1958. The principal purpose of the trip was to make the personal acquaintance of prospective agents who might handle the European end of shipments of household goods, which was then a relatively new phase of the business operations of the corporation. The secondary purpose of the trip was to renew contacts with existing agents and customers. At the time of their marriage in 1924, petitioners were employed by a firm engaged in business as international shipping agents. Since their marriage, Theresa, a qualified bookkeeper, has not been employed. She has been an active director of *331 the corporation since its incorporation in 1948, missing only one directors' meeting during this period. She sometimes goes to the offices of the corporation to consult with her husband and other officers and employees of the corporation. She regularly discusses the business with petitioner. She carries on personal correspondence with some of the agents and customers of the corporation and at times acts as the corporation's representative, taking visitors around New York City. On the trip to Europe, Theresa did sightseeing on weekends when possible. She took part in some of petitioner's meetings. She did not make any notations as to the people with whom she was speaking. She accompanied petitioner on some inspections and discussed with him the selection of agents. In addition, she reviewed petitioner's correspondence. While petitioner attended certain meetings Theresa remained at the hotels, where she performed incidental services, such as the handling of travel arrangements and the making of appointments. Respondent disallowed $2,800 of the amount deducted by the corporation for traveling expense. This was found to be taxable as a dividend to the individual petitioners "by reason *332 of the payment of Heidl's, Inc., of the expenses * * * incurred in connection with Mrs. Heidl's trip to Europe in 1958." In 1958 and 1959 the other officers of the corporation took business trips. In 1957 petitioner took a business trip alone to England and Germany to make some preliminary arrangements for getting the van operation started in Germany and in regard to some airplane business in England. The earned surplus of the corporation as of March 31, 1959 amounted to $10,659.69. A dividend of $3,500 was declared and paid in cash during the taxable year ended March 31, 1959. Opinion Although ordinarily perhaps corporate directors should be given wide latitude in the exercise of their independent judgment, the transactions of closely held, exclusively family businesses must be subjected to close scrutiny. . "Otherwise, the opportunity for abuse would be great." , affd. (C.A. 8, 1958). "Petitioners submit [on brief] that it is only because of the fact that Mr. and Mrs. Heidl are husband and wife that the deduction is being questioned." *333 An equally pertinent inquiry is whether, had Theresa not been the principal stockholder and wife of the corporation's president, the large amount spent for her travel expense would have been independently decided upon as a justifiable expenditure for purely bona fide business purposes of the corporation. She was not an officer or employee of the business. Whatever contacts she had with it, either while she was at home or during the trip, were apparently not considered sufficiently valuable to cause the payment to her of any compensation for services. As in , [the] petitioner [husband] testified that his wife assisted him in his work while on these business trips and that she was of help in entertaining the dealers. However, the evidence does not establish that her services were necessary, although they may have been helpful. Here, we may go further. The evidence indicates [1] that, while Theresa's services may have been helpful to her husband - which is not sufficient, , reversed other issue (C.A. 5, 1962) - they were not even helpful *334 in conducting the business of the corporate petitioner. Certainly "[the] evidence does not disclose * * * or convince us that" petitioner could not have performed his services for the corporation equally well, though perhaps with slightly less convenience, had he been unaccompanied by his wife. . As to this factual question, , we have concluded on the entire record that the corporate petitioner has failed to show that the claimed deductions were ordinary and necessary business expenses, ; , *335 and, there being adequate earnings and profits, it follows that the payment in controversy was a dividend. , affirmed per curiam (C.A. 9, 1958); Decisions will be entered for the respondent. Footnotes
1. Petitioner testified, for example: * * * [She] was very helpful to me in that she helped me with the inspection. We came to a decision and we checked each other that these would be the right people, the right firm, and sometimes we were invited by the different principals to come to their homes. We could see how they carried themselves. That is extremely important to us, to know what type of people we do business with. Then, when I made my reports, she would review the correspondence I had. * * *↩