BANK OF STOCKTON, A CALIFORNIA CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Bank of Stockton v. Commissioner
Docket No. 8793-74.
United States Tax Court
T.C. Memo 1977-24; 1977 Tax Ct. Memo LEXIS 419; 36 T.C.M. (CCH) 114; T.C.M. (RIA) 770024; January 31, 1977; as amended February 1, 1977, Filed Richard L. Greene, for the petitioner. William E. Saul, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioner's Federal income tax: Taxable Year Ending
Deficiency
June 30, 1971
573.59
June 30, 1972
396.99
Because of concessions made by petitioner, the sole issue before the Court is whether petitioner is entitled to a business expense deduction for reimbursements made to *420 certain shareholder-employees for expenses incurred by them in taking their wives to banking conventions. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, Bank of Stockton, is a California corporation with its principal office at the time of filing of the petition in Stockton, California. Since petitioner was formed in 1867 it has operated in Stockton, California, as a full service bank (providing its customers with commercial, savings and checking accounts; safe deposit boxes; and commercial, personal and installment loans). Petitioner derived its income from several sources, including service charges, interest on loans, investment income, euro-dollar transactions and leverage lease transactions. Petitioner also derived interest income from loan participation transactions with other banks ("correspondent banks") where either petitioner or the correspondent bank because of its capital structure was prohibited by banking laws from lending the entire amount sought by a borrower. In these situations petitioner and the correspondent bank each made loans to the borrower. These loan participation transactions required close personal *421 contacts between petitioner's officers and officers of the correspondent banks. In addition, petitioner's officers maintained close personal contacts with the officers of numerous "independent banks" in California. Both the correspondent banks and independent banks were available to advise petitioner on loans, investments, euro-dollar and leverage lease transactions, and various other phases of banking. Petitioner's officers and employees were encouraged to participate actively in banking associations, including the American Bankers Association ("ABA"), California Bankers Association ("CBA"), and the Independent Bankers Association ("IBA"). A past president of petitioner was one of the founders of the IBA of Northern California, and petitioner's officers and employees have taken active roles in all three of these organizations. Membership in these organizations was encouraged in order to establish and maintain personal contacts and effective working relationships with other banks and bankers. Through its officers' membership in the IBA, petitioner was able to develop working relationships with independent banks. Their memberships in the ABA and CBA provided petitioner with an *422 avenue for obtaining counsel and advice on various banking problems. Petitioner has for many years required its employees who attended the annual conventions of the ABA, CBA and IBA to take their wives. This policy extended only to the annual conventions and other meeting which included wives as registered participants. Annual meetings and other meetings of the ABA, CBA and IBA where wives are registered participants are organized with the attendance of the wives of bankers in mind, and it is customary for wives of bankers to attend them. Wives as registered participants, like their husbands, are expected to attend general business sessions of the meetings as well as special sessions presented especially for them. Social functions are planned for couples, and bankers without their spouses are few and out of place. Wives are not required or expected to attend special training, planning or legislative seminars held by these organizations throughout the year. Petitioner's principal purpose for requiring the wives of its employees to attend the annual conventions of the ABA, CBA and IBA was to assist their husbands in developing and renewing personal contacts with other bankers. *423 The wives' activities were designed to aid petitioner's employees to become better acquainted with other bankers. The wives entertained and socialized with other bankers and their wives, and acted as hostesses for petitioner's hospitality rooms. In addition, the wives' presence and demeanor at the convention was important to petitioner for public relations. Petitioner's image among other banks and bankers was in part reflected in the character and competence of its officers. The petitioner's image also was reflected in part by its officers' wives. Petitioner had two secondary objectives in requiring wives to attend the conventions. The first objective was to have the wives assist in planning and effectuating convention activities. The wives often served as hostesses of convention dinners and receptions, and planned other convention activities. Some of these convention duties were official duties arising because the wives were married to officers of the banking association or because an officer of the association requested the wives to plan a particular function. The second objective was to educate the wives and broaden their understanding of banking. As registered participants *424 of the conventions, the wives were invited to and did attend general and special sessions. These sessions often included a guest speaker such as Senator Mike Mansfield, Congressmen Wright Patman, Wilbur Mills and Gerald Ford, correspondents Marvin Kalb and Walter Cronkite, and Dr. Joyce Brothers, a noted psychologist and columnist. The topics discussed at these sessions covered a broad spectrum of banking subjects and some of the programs were specifically designed for the wives of bankers. During the years in issue 150,000 shares of petitioner's stock were outstanding. Petitioner's officer-shareholders held the following amounts and percentages of that stock: Name of Officers
Title
Shares
Percent
R. M. Eberhardt
Pres.
7083
4.72%
H. H. Harper
V. Pres.
575
.40%
R. C. Sanders
V. Pres.
1587
1.06%
D. M. Eberhardt
V. Pres.
5260
3.51%
Vince Fastiggi
V. Pres.
87
.06%
Daniel Schroebel
V. Pres.
37
.025%
J. K. Tener
V. Pres.
0
0
Don Giovannoni
V. Pres.
0
0
J. M. Dossey
A.V.P.
7
.0047%
R. G. Foley
A.V.P.
25
.017%
Arthur Kludt
A.V.P.
0
0
L. Wayne Bennett
A.V.P.
0.h0
John R. Dorothea
A.V.P.
0.h0
George J. Perazzo
A.V.P.
0
0
Gerry G. Baldwin
A.V.P.
0
0
F. E. Miller
Sr. Tr. O.
0
0
R. W. Friedberger
V.O. Tr. O.
0
0
Bruce Pendleton
Tr. O.
0
0
Orealia Busalacchi
Asst. Tr. O.
150
.10%
Freda Keser
A/C
2160
1.44%
S. W. Yost
A/C
20
.014%
Scott G. Hall
A/C
0
0
William E. Smith
A/C
0
0
Donald H. Schock
Auditor
0
0
J. A. Hudock
A/Auditor
0
0
Eleanor M. Merz
A/Sec.
25
.017%
Total
17016
11.3677%
*425 Two trusts created by the father of Robert and Douglas Eberhardt held 34,860 shares of petitioner's outstanding stock (23.24%). The income beneficiary of the trusts was the elder Mr. Eberhardt's widow. She also held the right to vote the stock held in trust. The record does not disclose who held the remaining shares of petitioner's outstanding stock. During both years in issue Robert Eberhardt was the immediate past president of the CBA. He also was petitioner's president and a member of petitioner's board of directors. He owned 4.72 percent of petitioner's stock. As president of petitioner, he selected the bank employees who attended the annual meetings of the ABA, CBA and IBA. Such selections were made without regard to whether an employee was also a shareholder of petitioner. From October 10 through October 14, 1970, Robert Eberhardt and his wife, Mimi, attended the annual ABA convention in Miami, Florida as registered participants. At the convention, Mimi attended the business sessions of the convention, introduced her husband to other bankers, assisted her husband in entertaining bankers, helped host receptions, entertained wives of officers of correspondent banks, *426 arranged for several dinner parties, and participated in a discussion involving one of petitioner's borrowers. On May 5, 1971, and on April 28, 1972, Robert and Mimi Eberhardt attended the CBA Group 2 annual convention at Yosemite, California. They were both asked to attend these conventions by the president of CBA Group 2, the executive director of the CBA, and the then president of the CBA. They attended these conventions as registered participants and at each of these conventions Mimi entertained representatives of correspondent banks and attended the speeches made by her husband. From May 23 through May 25, 1971, Robert and Mimi Eberhardt attended the annual CBA convention in San Diego, California. Roy Sanders (the vice-president, cashier and secretary of petitioner, and a 1.06 percent shareholder in petitioner) and his wife Jean, and Douglas Eberhardt (a vice-president, and 3.51 percent shareholder in petitioner) and his wife Margaret also attended this convention. At the CBA convention, Mimi Eberhardt attended the business sessions of the convention, the family dinner the first evening and the Wright Patman breakfast, arranged various functions (including dinners) *427 for her husband, helped him make new contacts with representatives of California banks, took messages for him, acted as a hostess for petitioner's hospitality room, helped her husband entertain various bankers (including representatives of correspondent banks) at the convention, and entertained the wife of a vice-president of Security Pacific National Bank, one of petitioner's correspondent banks, and the wife of the then president of the CBA. Jean Sanders attended the business sessions of the convention, the family dinner and the Wright Patman breakfast, played golf with some of the bankers' wives, accompanied her husband to the various hospitality rooms, and participated in most of the activities at the convention. Margaret Eberhardt helped her husband with his activities as president of CBA Group 6, attended the business sessions of the convention, the family dinner, the Wright Patman breakfast and the women's lunch, and entertained wives from correspondent banks. From February 11 through 13, 1972, Robert and Mimi Eberhardt, Roy and Jean Sanders, and Vincent Fastiggi (a vice-president, and a.06 percent shareholder of petitioner) and his wife Dorothy attended the annual IBA convention *428 in Carmel, California. All these individuals were registered participants of the convention. Daniel Schroebel (a vice-president of petitioner, and a.025 percent shareholder of petitioner, and, at that time, president of the IBA) also attended this convention with his wife Jackie. At the convention, Mimi Eberhardt helped Jackie Schroebel with Jackie's duties as the wife of the president of the IBA. Mimi gave a convention luncheon, entertained the State Assemblyman who represents petitioner's district and his wife, attended the business sessions of the convention, played in the ladies doubles tennis tournament with the wife of a vice-president of the IBA, and gave a breakfast for all the bankers and wives attending the convention. Jean Sanders also aided Jackie Schroebel with the latter's convention activities. Jean ran the convention's golf tournament, helped her husband host the past president's night, attended the business sessions of the convention, and took notes and did typing for her husband. At this convention Dorothy Fastiggi and her husband ran the convention registration. Dorothy also acted as hostess of the convention together with other representatives of petitioner, *429 attended the business sessions of the convention, had dinner with the Superintendent of Banks, helped in the hospitality room, and attended all the activities for the ladies. None of the five conventions in issue were vacations for petitioner's officers or their wives, and none of the conventions were preceded or followed by vacations for any of the officers or their wives. The expenses in issue attributable to the wives of petitioner's employee-shareholders for which petitioner reimbursed the employee-shareholders, were as follows: Taxable Year Ending Convention
Date
Present
6/30/71
6/30/72
American Bankers Assn.
10/10 thru
Mr. & Mrs. Robert Eberhardt
$744.84
Miami, Florida
10/14/70
California Bankers Assn.
5/5/71
Mr. & Mrs. Robert Eberhardt
45.00
Group II
Ahwanee Hotel
Yosemite National Park
California Bankers Assn.
5/23 thru
Mr. & Mrs. Robert Eberhardt
132.00
$124.00
San Diego, California
5/25/71
Mr. & Mrs. Douglas Eberhardt
Mr. & Mrs. Roy Sanders
Independent Bankers Assn.
2/11 thru
Mr. & Mrs. Robert Eberhardt
105.00
Carmel, California
2/13/72
Mr. & Mrs. Roy Sanders
Mr. & Mrs. Vince Fastiggi
California Bankers Assn.
4/28/72
Mr. & Mrs. Robert Eberhardt
30.00
Group II
Ahwanee Hotel
Yosemite National Park
$921.84
$259.00
*430 Petitioner deducted these convention expenses on its Federal income tax returns for the fiscal years ending June 30, 1971 and June 30, 1972. Respondent in his statutory notice of deficiency disallowed these amounts in their entirety. [1]
OPINION The only issue is whether reimbursement payments made by petitioner, the Bank of Stockton, to certain of its employees, who were also stockholders, for convention expenses of their wives were deductible by the Bank. Petitioner contends that the wives' expenses were its ordinary and necessary expenses, since they were incurred for its direct and substantial benefit. Petitioner does not make an alternative contention that the amounts would in any event be deductible as additional compensation to the employees whose wives were involved. Respondent asserts that while the activities of the wives at the conventions may have been of some incidental benefit to petitioner's employees, these activities were not necessary to *431 petitioner's banking activities. [2] Respondent does not in turn contend that the reimbursed expenses were disguised dividends to the shareholder-employees whose wives were involved, although respondent's allowance of the convention expenses attributable to wives of non-shareholder-employees suggests that this was in fact his underlying theory. [3]
The question of whether a taxpayer is entitled to a deduction under section 162[4] for convention expenses attributable to wives of its employees has been a particularly troublesome one for courts. This difficulty exists because of the likelihood of corporate payments of an essentially personal expense being disguised as a business expense. Such a disguise may mask either a dividend or additional compensation to the employee whose wife's expenses are paid. If it is additional compensation, and does *432 not, with other compensation, exceed the bounds of reasonableness, it would be deductible to the employer under section 162(a) (1), see section 1.162-7(a), Income Tax Regs., but would be includible in the income of the employee. Section 1.62-2(a), Income Tax Regs. The employees' returns are not before us here. Ordinarily courts are inclined to give wide latitude to the business judgment of a corporate employer in determining whether an expense is necessary. However, in situations involving closely-held corporations the business judgment of the corporate-employer is subjected to close scrutiny in order to insure that the corporation is not allowed a deduction for a dividend which takes the form of payment of the personal *433 expenses of its shareholders. See Challenge Manufacturing Co.,37 T.C. 650, 661 (1962); Robert Lee Henry,36 T.C. 879, 884 (1961). However, petitioner's stock ownership was widely dispersed; none of the reimbursed officer-shareholders held over five percent of the stock of petitioner, and the president of petitioner, with whom rested the authority to designate which employees and wives would attend certain conventions, was a less than five percent shareholder. [5] Moreover, petitioner's policy requiring wives of officers to attend certain conventions with their husbands originated many years prior to the years in issue and was applied to all officers without regard to whether an officer was also a shareholder. It seems quite far-fetched under the circumstances to characterize the payments in question as dividends. There was no approximation of proportionality; the holders of most shares did not participate in the payments in question; most of those employees who did so participate had no stock or only extremely minor holdings in petitioner. *434 If not a dividend, the payments would appear to be deductible either as ordinary and necessary business expenses or as additional compensation. If we were to determine, as respondent appears to contend, that the wives' presence at the conventions was essentially superfluous, the question would remain why a presumably rational bank should regularly incur such expenditures. The dividend theory having been ruled out, the only reasonable answer would be that payments for the wives' attendance at the conventions was in the nature of additional compensation to the employees. Almost any convention contains elements of both business and pleasure. While in most cases the attendance of the employee himself will pass muster as preponderantly business motivated, the utility of the spouse's presence is usually less demonstrable. However, once the dividend theory has been ruled out, the availability, to the corporate payor, of the deduction in question will not ordinarily depend upon whether the payment is a business expense or is intended as compensation. Only if the overall compensation of the recipient is unreasonable in amount, or becomes so by virtue of the additional compensatory payment, *435 would characterization of the deduction as added compensation give rise to disallowance of the deduction here. The record here discloses no indication that any employee involved earned compensation bordering upon the unreasonable. Therefore, we could hold for petitioner without more, on the grounds that the payments were clearly not dividends and must represent either additional reasonable compensation, deductible under section 162(a)(1), or, as claimed, ordinary and necessary business expenses, deductible under section 162(a. Nevertheless, both parties have tried their case entirely on the theory that the issue is whether the payments were ordinary and necessary business expenses. The record is lacking in data regarding reasonableness of compensation of the officers whose wives attended the conventions in question. It is a close question, therefore, whether the record would permit us to determine that the payments in question, viewed as compensation, were reasonable in amount, hence deductible. Petitioner, upon whom rests the burden of proof, has not tried this issue, and has not argued deductibility under section 162(a)(1). Because we can avoid this difficulty if we are able *436 to find that the expenses in question are deductible as noncompensatory ordinary and necessary business expenses under section 162(a), we now address that question. Generally, for an expenditure to be an ordinary and necessary business expense the taxpayer must show a bona fide business purpose for the expenditure as well as a proximate relationship between the expenditure and this purpose. Challenge Manufacturing Co.,37 T.C. 650 (1962); Robert Lee Henry,36 T.C. 879 (1961). However, a taxpayer is not required to show that the expenditure was indispensable to its business. An expenditure qualifies as a "necessary" expense where it is "appropriate and helpful" to the taxpayer's business. Welch v. Helvering,290 U.S. 111, 113 (1933). Whether an expense is an ordinary and necessary one is essentially a question of fact. Commissioner v. Heininger,320 U.S. 467, 475 (1943). Among the facts to be considered in determining whether an expense is ordinary and necessary are the taxpayer's trade or business ( *437 Welch v. Helvering,supra;United States v. Disney,413 F. 2d 783 (9th Cir. 1969)), the practices within that particular trade or business ( Welch v. Helvering,supra), the benefit derived from the particular expenditure (see Robert Lee Henry,supra at 885), whether the expenditure is for items which are inherently personal (Robert Lee Henry,supra; L.L. Moorman,26 T.C. 666, 679 (1956); cf. David I. Hitchcock,66 T.C. 950 (1976)), whether the taxpayer is an individual or a corporation and, if a corporation, whether it is a publicly-owned or closely-held corporation (see Challenge Manufacturing Co.,supra; Francis X. Heidl, 33 P-H Memo. par. 64,007, 23 T.C.M. 27 (1964)), and the employment requirements imposed by an employer ( United States v. Disney,supra; Stratton v. Commissioner,448 F. 2d 1030 (9th Cir. 1971), rev'g 52 T.C. 378 (1969) (this last criterion has been applied by the Ninth Circuit Court of Appeals, but was rejected by this Court in Hitchcock,supra *438 ). In the case of convention expenses, the courts have also considered such facts as the site of the convention (cf. Patterson v. Thomas,289 F. 2d 108, 113 (5th Cir. 1961), cert. denied 368 U.S. 837 (1961)), and the activities of the wives at the convention (cf. Patterson v. Thomas,supra). Respondent contends that the trips were not "necessary" to petitioner's banking business in that there was no bona fide business purpose in requiring the wives to attend the conventions and the payments were not proximately related to petitioner's banking business. Petitioner's banking activities included loan participation arrangements with correspondent banks, and leverage lease and euro-dollar transactions with correspondent and other banks. These activities required a close personal relationship between petitioner's officers and the officers of correspondent and other banks. In order to facilitate and develop these relationships, petitioner encouraged its officers to participate in various banking organizations and selected certain officers to attend banking conventions. Petitioner also required the officers who attended *439 various annual conventions to be accompanied by their wives. The wives were required to attend the conventions to assist their husbands in developing and renewing personal contacts with other bankers. These facts demonstrate that the wives' presence on the trips served a bona fide business purpose of petitioner. We conclude, in addition, that the wives' convention expenses were proximately related to petitioner's banking activities. The convention programs included both educational and social activities. Wives of officers participated in the educational aspects of the convention and were instrumental to the success of the social activities. They both organized and hosted numerous convention activities and also entertained bankers with whom petitioner's officers transacted business and from whom they sought advice. These activities aided petitioner's officers in making new contacts and renewing old contacts. In addition, their presence and demeanor at the conventions enhanced the images of petitioner and its officers. These activities, in turn, aided petitioner in developing business relationships with other banks. Such relationships were of substantial benefit to petitioner. *440 We also have found that it was customary for wives of bankers to attend and participate in the annual meetings of the ABA, CBA and IBA. We therefore conclude on these facts that the wives' presence at the conventions was proximately related to petitioner's banking business. In view of our conclusions, we hold that, on these facts, the convention expenses attributable to the wives were ordinary and necessary business expenses of petitioner. Because of concessions made by petitioner, Decision will be entered under Rule 155. Footnotes
1. Respondent allowed petitioner the convention expenses attributable to wives of employees who were not shareholders and also allowed petitioner the convention expenses attributable to Jackie Schroebel.↩
2. Respondent does not contend the payments were not "ordinary" expenses. ↩
3. It is difficult to find any other logical basis for respondent's determination that payment of the convention expenses of wives of non-shareholder-employees was "necessary" while payment of such expenses of wives of shareholder-employees was not.↩
4. All section references are to the Internal Revenue Code of 1954, as in effect in the years in issue. Section 162 provides in pertinent part: There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *↩
5. Compare Challenge Manufacturing Co.,37 T.C. 650 (1962) (no bona fide business purpose found for wife's presence on trips where husband was sole shareholder of petitioner); Alabama-Georgia Syrup Co.,36 T.C. 747, 768-769 (1961), rev'd. and remanded on other issues sub nom.L.B. Whitfield, Jr. v. Commissioner,311 F. 2d 640 (5th Cir. 1962) (wife's service on trip found not to be necessary to corporation where petitioner was a closely held family corporation); L.R. Schmaus Co., Inc., 36 P-H Memo. par. 67,197, 26 T.C.M. 959 (1967), rev'd. on other issues 406 F. 2d 1044 (7th Cir. 1969) (no bona fide business purpose found and no proximate relationship to the corporation's business found for wife's presence on trips where husband was sole shareholder of petitioner): FrancisX. Heidl, 33 P-H Memo. par. 64,007, 23 T.C.M. 27↩ (1964) (no bona fide business purpose found for wife's trips where husband and wife owned 71% of petitioner's stock).